## HARTFORD AND DEDHAM TURNPIKE CORPORATION *versus* OBED BAKER.

The *St.* 1803, *c.* 146, incorporating a turnpike corporation, authorized the corporation to erect a gate in such place as should be directed by a committee appointed by the statute; and the committee accordingly, by their report dated in 1807, prescribed the limits within which the gate should be erected.   It was *held,* that the corporation having once established a gate in conformity with such report, could . not afterwards remove it to another place at their own discretion, although within the limits prescribed, but must comply with the provisions of *St.* 1804, *c.* 125, § 13, [Revised St. *c.* 39, § 28, 29,] in relation to this subject; and that they would not legally demand toll, at the place to which the gate was so removed.

THIS was assumpsit to recover tolls amounting to the sum of $82·40.

The trial was in the Court of Common Pleas, before *Strong* J.

By *St.* 1803, *c.* 146, incorporating the Hartford and Dedham Turnpike Corporation, the corporation were authorized to erect two turnpike gates in such places as a committee appointed by that statute should direct.   The report of this committee, which was dated November 19, 1807, directed that one of the toll-gates should be erected between the land of Horatio Adams in Medway, and Breck's corner, in Medfield.   This gate was accordingly erected by the plaintiffs near the land of Adams in Medway, and was continued there until 1814, when it was removed to a place within the limits prescribed by the committee, but nearer Breck's corner, and about a mile and a quarter distant from the place where it

originally stood. Between these two places a public highway crossed the turnpike road. The tolls, which were the subject of the action, were alleged to have accrued at this gate.

The judge, in order that the facts might be settled by the jury, ruled all the questions of law arising upon the evidence, in favor of the plaintiffs. To this ruling the defendant excepted. The jury returned a verdict for the plaintiffs.

*Mann*, for the defendant, to the point, that the plaintiffs having once selected a site for the gate within the limits prescribed by the committee, their discretionary power as to its location was exhausted, cited *Griffen* v. *House*, 18 Johns. R. 397.

*Leland*, for the plaintiffs.

PUTNAM J. afterward drew up the opinion of the Court. We are all of opinion that the plaintiffs had no right to remove the gate, which was erected, pursuant to the report of the commissioners, near the land of Horatio Adams, to Breck's corner ; and this objection is fatal to the action.

The plaintiffs were incorporated on March 9, 1804, to make the turnpike road. 3 Special Laws, 410. On March 16, 1804, the *St.* 1804, c. 125, passed, defining the general powers and duties of turnpike corporations, and by the 13th section the mode of proceeding is pointed out when the proprietors desire to remove a gate which had been or should be erected. It provides, that whenever the directors of any turnpike corporation heretofore established, or which may be hereafter established by law, shall wish to remove a gate or gates by such corporation then duly erected on the turnpike road of such corporation, it shall and may be lawful for such directors or a majority of them, to petition the Court of Common Pleas to be holden within and for the county where such gate or gates may be erected, praying for the removal of such gate or gates, and stating the reasons therefor ; and thereupon it shall and may be lawful for the said court to nominate and appoint a committee of three disinterested and sufficient freeholders, inhabitants of said county, whose duty it shall be, after being duly sworn to the faithful discharge of their trust, at the expense of the corporation whose gate or gates are intended to be removed, to give notice to all persons interested,

Hartford and Dedham Turnpike Corp.
*v.*
Baker.

*Oct. 28th*

of their appointment, and the time and place of meeting for the purpose of attending to the business of their commission, by advertising the same in such newspaper as the said court may order, ten days at least before the time appointed for such meeeting ; and also at the said time appointed as aforesaid, to repair to the gate or gates mentioned in such petition, and after hearing all parties interested, to determine whether the said gate or gates shall be removed as prayed for, and report their said determination as soon as may be to the same court, who are authorized, if they should deem it expedient, to order said gates to be removed and located according to the report of such committee."

Now taking it for granted, that the gates were legally erected in the places where they were put up at first, we all think, that when the company had put them up, they had elected the precise spot where they placed them ; their discretionary power from thenceforward ceased. And as decided in *Griffen* v. *House*, 18 Johns. R. 397, the company cannot, without some strong and manifest necessity, change the local situation of the gates which have been once erected, merely to suit their own convenience.

The provision of the general act which we have before cited, is extremely reasonable and expedient. But the plaintiffs have removed the gate to suit their own convenience or interest, without complying with the terms which the legislature have clearly and wisely pointed out. And as the plaintiffs had no legal right to remove the gate from the place where it was first put, to the place where it stood when the claim of the plaintiffs arose for tolls, we are all of opinion, that they could not there rightfully stop the defendant with his horses and wagon, and could not lawfully demand and recover toll from him at that place.

Let the plaintiffs become nonsuit.